IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

WINFRED G. BEASLEY                                                    PLAINTIFF

v.                              No. 3:16-cv-196-DPM

WARREN UNILUBE, INC.                                                  DEFENDANT

ORDER

**Background.** Winfred Beasley, an African-American gentleman, received his degree in industrial engineering from Mississippi State University. He later became certified as an International Standards Organization quality control manager. In 2012, Warren Unilube hired him as an ISO quality control manager for its West Memphis facility. № 16-1 at 22. Warren manufactures various automobile fluids—the oils one sees in plastic bottles at places like AutoZone. № 13-3 at 2. Beasley's job, as Warren's only quality manager, was twofold: to maintain the company's ISO certification; and to help make sure that the oil was properly packaged, labeled, and capped. № 13-3 at 3; № 16-1 at 28–29. In reality, though, Beasley was Warren's failsafe for ensuring that its products left the warehouse in correct condition. № 16-1 at 28–29, 35–37; № 16-3 at 59–60.

In 2015, a series of quality control mishaps—primarily mislabeled bottles of oil—caused AutoZone to sever its relationship with Warren. № 16-2 at 30. Family Dollar and Carquest also complained of defects.

Warren says that these strained customer relations threatened the survival of its West Memphis facility. In response, the company investigated and reorganized. All this happened in the summer of 2015. *№ 16-2 at 20*. So did an ISO audit, which cited the company for several infractions. *№ 16-4 at 24*. Warren says that the auditor informally warned that the company's ISO certification could be revoked if its production problems continued. *№ 16-2 at 26*.

Steve Estok, the Vice President of Warren, fired Beasley in August 2015. Estok replaced Beasley with Ty Smith, a white man. Beasley wasn't offered a demotion, reassignment, or reevaluation. A few months later, in early 2016, Beasley filed an EEOC charge against Warren for employment discrimination. He alleged that he was treated differently from his white peers and that his race was the real reason behind his firing. That charge was dismissed in August 2016. Beasley then filed this case, alleging discrimination and retaliation. Discovery is complete, all the evidence is now in, and Warren seeks judgment as a matter of law. Beasley presses for a jury trial.

**Retaliation.** Warren is entitled to summary judgment on Beasley's retaliation claim. Beasley didn't make that claim in his EEOC charge. *№ 1 at 16*. Title VII requires exhaustion. *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006). And Beasley doesn't argue the Title VII point, or any factual basis for a retaliation claim arising from other applicable law.

**Discrimination.** Everyone agrees that there's no direct evidence of racial discrimination in this case. The circumstances thus start the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973) machinery.

Warren argues that Beasley hasn't shown the *prima facie* elements. But his burden here is minimal. *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015). It's uncontested that Beasley is black, was qualified for his job, was fired for reasons that he disputes, and was replaced by a white male. *Grant v. City of Blytheville*, 841 F.3d 767, 773–74 (8th Cir. 2016). Plus, on this issue, the Court must give Beasley the benefit of every reasonable inference. The deep and dispositive issue is why Beasley was fired. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011)(en banc). That goes beyond the elements, to the merits.

Warren's stated reason for firing Beasley is strong. Warren says that its plant had quality control problems; Beasley was the quality manager; and these problems hurt the business. That's a legitimate and non-racial reason to fire someone. The record shows many quality control problems and strained customer relations, all of which support the company's rationale. *Muor v. U.S. Bank National Association*, 716 F.3d 1072, 1076–77 (8th Cir. 2013).

In response, Beasley points to white managers, who he believes were similarly situated to him, and who were reassigned or reevaluated instead of fired. He also points to some black managers that were

demoted or fired. Here, the parties skirmish about who the best comparator is. *E.g., № 16-2 at 95–97.* The Court concludes that there is none: Beasley's job was unique. He was the only quality manager. He's surely correct that other managers weren't fired for similar quality problems—or for similar problems in their respective fields. The difficulty for Beasley, though, is that none of these other managers were as specialized in the area in which Warren was struggling. Beasley's job was quality control, and that was the problem. This makes any comparison to employees in different roles—or similar roles at different times—strained. Rusty Brown, for example, wasn't as specialized in quality control as Beasley was; Estok testified that he reassigned Brown to test his "bench strength" in other roles. *№ 16-2 at 16.* There simply aren't other employees "similarly situated [to Beasley] in all relevant respects." *Johnson v. Securitas Security Services USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014)(en banc).

Lack of a sufficient comparator doesn't close the case, though. Beasley's role was unique and his core argument goes beyond it: he says that the problems at Warren weren't his fault. Was he disproportionately blamed because of his race? He points to various manufacturing errors that he caught, told other departments about, and instructed them on how to fix. There's solid evidence of this detection and instruction. *E.g., № 16-4 at 33–35.* Because of his role, however, Beasley couldn't fix the problems by himself. *№ 16-1 at 34–35.* The

various defective products that Beasley stored in his office speak to the fact that Beasley was finding and identifying defective products.

But finding defects was only half the battle for Warren. The company also needed them fixed. Even though Beasley couldn't correct them on his own, it was reasonable for Warren to point the finger at its quality manager for persistent quality problems. So, while the Court understands Beasley's frustration, it also understands Warren's response when the defects continued. By the time Warren lost AutoZone's business and got the warning shots from Family Dollar and Carquest, a strong response was justified. Warren investigated. It found that many of the quality problems could have been dealt with earlier and, needing a quick fix, it concluded that Beasley's record of slow change and inexperience in the oil industry wasn't adequate in the circumstances. *№ 16-2 at 30–36; № 16-4 at 61–64.*

There is, of course, no way to know whether this business decision was the correct one. Beasley's replacement didn't last. *№ 13-3 at 3.* And Beasley argues hard that he could have fixed many of Warren's problems had he been allowed to. This may well be true. But, facing a crisis in the summer of 2015, his boss came to a different conclusion. As best the Court can tell from the whole record, that conclusion was simply a judgment call, one uninfected by race.

**Summary.** All this boils down. Persistent quality control issues strained Warren's customer relationships. Warren responded by

investigating. It fired some people and reassigned others. It decided that the buck stopped with its quality manager, who was black. On this record, there's insufficient evidence that Beasley's firing was race driven. Rather, Warren made a business decision. It wanted to improve the quality of its products ASAP. The company has been consistent in this reasoning. And, notwithstanding Beasley's solid arguments that Warren's quality control issues weren't his fault, there isn't sufficient evidence to support a verdict that race prompted Beasley's firing.

* * *

Motion for summary judgment, № 13, granted. Motion *in limine*, № 26, denied as moot. Judgment will issue.

So Ordered.

*D.P. Marshall Jr.*
United States District Judge

6 July 2018